# EXHIBIT C



### ACCOUNT CONTROL AGREEMENT

among

### ENTERPRISE GREEN ACCELERATOR, INC., as PLEDGOR

### POWER FORWARD COMMUNITIES, INC., as SECURED PARTY

and

### CITIBANK, N.A., as BANK

**Dated as of** _____ January 10, 2025 _____

**THIS ACCOUNT CONTROL AGREEMENT** (this "**Agreement**"), dated as of _____, by and among Enterprise Green Accelerator, Inc., January 10, 2025 a ___Maryland___ nonstock, nonprofit corporation (the "**Pledgor**"), Power Forward Communities, Inc, a Delaware Nonstock Nonprofit corporation (the "**Secured Party**") and Citibank, N.A., a national banking association organized and existing under the laws of the United States of America ("**Citibank**") and acting through its Agency & Trust business solely in its capacity as bank under this Agreement, and any successors appointed pursuant to the terms hereof (Citibank in such capacity, the "**Bank**").

**WHEREAS,** the Secured Party has entered into a certain federal financial assistance agreement with the United States Environmental Protection Agency, an agency of the United States Government, as identified in Addendum 1, (the "**Grant Agreement**").

**WHEREAS,** under the Grant Agreement, Pledgor and Secured Party have entered into a Subaward as identified in Addendum 1, (the "**Subaward Agreement**"), pursuant to which the Pledgor has granted the Secured Party a security interest in the accounts as identified in Addendum 1 established and maintained by the Bank for the Pledgor (the "**Accounts**").

**WHEREAS,** the Bank has been designated and authorized to act as a financial agent of the United States pursuant to the authority of the U.S. Department of the Treasury under 12 U.S.C. §§ 90 and 265.

**WHEREAS,** the parties wish that the Bank enter into this Agreement in order to provide for the "control" (as defined in Section 9-104(a) of the Uniform Commercial Code in effect in the State of New York ("**UCC**"), in the case of a deposit account, or Section 8-106 of the UCC, in the case of a security account) of the accounts as a means to perfect the security interest of the Secured Party.

**WHEREAS,** the Pledgor and the Secured Party have agreed that the terms and conditions in the Subaward Agreement indicate the conditions under which the Secured Party may exercise its right of control herein, and such conditions will be defined as "default" for the purposes of this Agreement.

**WHEREAS**, capitalized terms used herein without definition and that are defined in Article 8 or Article 9 of the UCC as adopted in the State of New York shall have the respective meanings set forth therein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the parties hereto agree as follows:

1.     **The Accounts.** The Pledgor and the Bank represent and warrant to, and agree with the Secured Party that:

(a)     The Bank maintains the Accounts for the Pledgor, and all property (including, without limitation, all funds and financial assets) held by the Bank for the accounts of the Pledgor are, and will continue to be, credited to the Accounts in accordance with instructions given by the Pledgor (unless otherwise provided herein).

(b)     To the extent that cash is credited to the Accounts, the Accounts are a deposit account; and to the extent that financial assets (other than cash) are credited to the Accounts, the Accounts are a securities account. The Bank is (i) the bank with which the Accounts are maintained

and (ii) the securities intermediary with respect to financial assets held in the Accounts. The Pledgor is (A) the Bank's customer with respect to the Accounts and (B) the entitlement holder with respect to all financial assets credited from time to time to the Accounts.

(c)      Notwithstanding any other agreement to the contrary, the Bank's jurisdiction with respect to the Accounts for purposes of the UCC is, and will continue to be for so long as the Secured Party's security interest shall be in effect, the State of New York.

(d)      The Pledgor and the Bank do not know of any claim to or interest in the Accounts or any property (including, without limitation, funds and financial assets) credited to the Accounts, except for claims and interests of the parties referred to in this Agreement.

## 2.      **Control over Accounts.**

The Bank shall comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts including, without limitation, directions to distribute proceeds of any such transfer or redemption of interest or dividends on financial assets in the Accounts, substantially in the form attached hereto as Exhibit B ("**Account Direction**"), originated by the Pledgor, until the time that that Bank receives a notice, substantially in the form attached hereto as Exhibit A (a "**Notice of Exclusive Control**") from the Secured Party that the Secured Party is exercising its right to exclusive control over an Account, and after such time that the Bank receives a Notice of Exclusive Control, the Secured Party for such Account, without further consent by the Pledgor.

## 3.      **Priority of Secured Party's Security Interest.**  The Bank subordinates in favor of the Secured Party any interest, lien or right of setoff it may have, now or in the future, against the Accounts or assets in the Accounts; *provided; however*, that, subject to the foregoing, the Bank may set off all amounts due to it in respect of its fees and expenses (including, without limitation, the payment of any legal fees or expenses) or any amounts payable pursuant to Section 4 hereof.

## 4.      **Investment of Funds**.

(a)      The Bank shall deposit the assets in non-interest bearing Accounts and invest the assets in the Accounts consistent with the instructions provided by the Pledgor, in Addendum 1. The Pledgor's instructions will be in accordance with the Subaward Agreement, provided that the Bank is not responsible for verifying whether the Pledgor's instructions are in compliance with the Subaward Agreement. The Bank shall invest such assets in the Accounts on the date of deposit provided that such assets are received on or before 11:00 a.m. New York City time. Any assets received after 11:00 a.m. New York City time shall be treated as if received on the following Business Day. For purposes of this Agreement, "**Business Day**" shall mean any day that the Bank is open for business.

(b)      The Bank is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required under this Agreement. The Bank shall have no responsibility or liability for any loss in the value of any investment made pursuant to this Agreement, or for any loss, cost or penalty resulting from any sale or liquidation of the assets in the Account. The Bank is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Bank does not have a duty nor will it undertake any duty to provide investment advice.

citi

(c)     The Bank shall transfer any earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts to the Pledgor's Program Income from Operations Account on a monthly basis.

5.    **Tax Matters.**

(a)     The Pledgor and the Secured Party agree that, unless and until the Subaward Agreement is terminated, any earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts shall be treated as the income of the Pledgor and shall be reported on an annual basis on United States Internal Revenue Service ("**IRS**") Form 1099-DIV, as required pursuant to the Internal Revenue Code of 1986, as amended (the "**Code**") and the regulations thereunder. Principal payments are not reportable to any payee hereunder. No earnings or proceeds received on or distributions of earnings or proceeds from the assets in the Accounts, or principal payments from the Accounts, are reportable to the Secured Party. The Pledgor, the Secured Party and the Bank agree that the Bank will not be responsible for providing tax reporting and withholding for payments that are for compensation for services performed by an employee or independent contractor.

(b)     The Pledgor and the Secured Party shall upon the execution of this Agreement provide the Bank with a duly completed and properly executed IRS Form W-9 or applicable IRS Form W-8, in the case of a non-U.S. person, for each payee, together with any other documentation and information requested by the Bank in connection with the Bank's tax reporting obligations under the Code and the regulations thereunder. With respect to the Bank's tax reporting obligations under the Code, the Foreign Account Tax Compliance Act and the Foreign Investment in Real Property Tax Act and any other applicable law or regulation, the Pledgor and the Secured Party understand, that, in the event valid U.S. tax forms or other required supporting documentation are not provided to the Bank, the Bank may be required to withhold tax from the assets in the Accounts and report account information on any earnings, proceeds or distributions from the assets in the Accounts.

(c)     Should the Bank become liable for the payment of taxes, including withholding taxes relating to any funds, including interest and penalties thereon, held by it pursuant to this Agreement or any payment made hereunder, Secured Party and Pledgor agree, jointly and severally, to indemnify and hold the Bank harmless pursuant to Section 7(b) hereof from any liability or obligation on account of taxes, assessments, interest, penalties, expenses and other governmental charges that may be assessed or asserted against the Bank, provided that such liability shall not be satisfied by assets in the Accounts. If the Pledgor or Secured Party fail to indemnify the Bank for such taxes, the Bank will notify the United States Environmental Protection Agency.

(d)     The Bank's rights under this Section 5 shall survive the termination of this Agreement or the resignation or removal of the Bank.

6.    **Concerning the Bank.**

(a)     <u>Bank Duties</u>. Each of the Pledgor and the Secured Party acknowledges and agrees that (i) the duties, responsibilities and obligations of the Bank shall be limited to those expressly set forth in this Agreement, each of which is administrative or ministerial (and shall not be construed to be fiduciary in nature), and no duties, responsibilities or obligations shall be inferred or implied, (ii) the Bank shall not be responsible for any of the agreements referred to or described

citi

herein (including, without limitation, the Grant Agreement, the Subaward Agreement, and any defined term therein not otherwise defined in this Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, and (iii) the Bank shall not be required to expend or risk any of its own funds to satisfy payments from the Accounts hereunder.

(b)    Liability of Bank.  The Bank shall not be liable for any damage, loss or injury resulting from any action taken or omitted in the absence of gross negligence or willful misconduct (as finally adjudicated by a court of competent jurisdiction).   In no event shall the Bank be liable for indirect, incidental, consequential, punitive or special losses or damages (including but not limited to lost profits), regardless of the form of action and whether or not any such losses or damages were foreseeable or contemplated.  The Bank shall be entitled to rely upon any instruction, notice, request or other instrument delivered to it without being required to determine the authenticity or validity thereof, or the truth or accuracy of any information stated therein.  The Bank may act in reliance upon any signature believed by it to be genuine (including any signature affixed by DocuSign) and may assume that any person purporting to make any statement, execute any document, or send any instruction in connection with the provisions hereof has been duly authorized to do so.  The Bank may consult with counsel satisfactory to it, and the opinion or advice of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it in good faith and in accordance with the opinion and advice of such counsel.  The Bank may perform any and all of its duties through its agents, representatives, attorneys, custodians and/or nominees.  The Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

(c)    Reliance on Orders.  The Bank is authorized to comply with final orders issued or process entered by any court with respect to the assets in the Accounts, without determination by the Bank of such court's jurisdiction in the matter.  If any portion of the assets in the Accounts are at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Bank is authorized to rely upon and comply with any such order, writ, judgment or decree which it is advised is binding upon it without the need for appeal or other action; and if the Bank complies with any such order, writ, judgment or decree, it shall not be liable to the Pledgor or the Secured Party or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

(d)    Erroneous Payments.  If the Bank releases any funds (including but not limited to the assets in the Accounts or any portion of it) to the Pledgor or the Secured Party and subsequently determines (in its absolute discretion) that the payment (or any portion of it) was made in error, the Pledgor or the Secured Party, as applicable, shall upon notice promptly refund the erroneous payment, and none of the obligations of the Pledgor or the Secured Party, as applicable, or the remedies of the Bank will be affected by any act, omission, matter or thing (including, without limitation, any obligation pursuant to which an erroneous payment is made) which, but for this provision, would reduce, release, preclude or prejudice any such obligation or remedy (whether or not known by the Bank, the Pledgor or the Secured Party). Each of the Pledgor and the Secured Party agrees not to assert discharge for value, bona fide payee, or any similar doctrine as a defense to recovery of any erroneous payment by the Bank.

citi

7.     **Compensation, Expense Reimbursement and Indemnification.**

(a)     <u>Compensation</u>. The Bank's compensation shall be as specified in <u>Schedule A</u>.

(b)     <u>Indemnification</u>. Each of the Pledgor and Secured Party covenants and agrees, jointly and severally, to indemnify the Bank and its employees, officers, directors, affiliates, and agents (each, an "**Indemnified Party**") for, hold each Indemnified Party harmless from, and defend each Indemnified Party against, any and all claims, losses, actions, liabilities, costs, damages and expenses of any nature incurred by any Indemnified Party, arising out of or in connection with this Agreement or with the administration of its duties hereunder, including, but not limited to, attorney's fees, costs and expenses, except to the extent such loss, liability, damage, cost or expense shall have been finally adjudicated by a court of competent jurisdiction to have resulted solely from the Indemnified Party's own gross negligence or willful misconduct, provided that such liability shall not be satisfied by assets in the Accounts. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement and the resignation or removal of the Bank. If the Pledgor or Secured Party fails to indemnify the Bank pursuant to this Section 7(b), the Bank shall notify the United States Environmental Protection Agency.

8.     **Statements, Confirmations and Notices of Adverse Claims.**  The Bank will send copies of all statements and confirmations for the Accounts simultaneously to the Pledgor and the Secured Party.  The Bank shall be deemed to have delivered statements and confirmations if such statements and confirmations are available on one or more of the Bank systems to deliver electronic media.  The Bank will use reasonable efforts promptly to notify the Secured Party and the Pledgor if any other person claims that it has a property interest in the Accounts or any financial asset in the Accounts.

9.     **Entire Agreement; Exclusive Benefit.**  This Agreement constitutes the entire agreement between the parties and sets forth in its entirety the obligations and duties of the Bank with respect to the assets in the Accounts.  This Agreement is for the exclusive benefit of the parties to this Agreement and their respective permitted successors, and shall not be deemed to give, either expressly or implicitly, any legal or equitable right, remedy, or claim to any other entity or person whatsoever.  No party may assign any of its rights or obligations under this Agreement without the prior written consent of the other parties.

10.     **Resignation and Removal.** The Bank may be removed only by the U.S. Department of the Treasury.

11.     **Governing Law.** This Agreement is governed by and shall be construed and interpreted in accordance with federal law of the United States, except where there is no applicable federal law, in accordance with the laws of the State of New York, without giving effect to the conflict of laws principles thereof.

12.     **Representations and Warranties.**

(a)     Each of the Pledgor and the Secured Party represents and warrants that it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms, except as may be limited by applicable

bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting the enforcement of creditors' rights and subject to general equity principles.

(b)    Each of the Pledgor and the Secured Party represents that neither it nor any of its parents or subsidiaries, or any of their respective directors, officers, or employees, or to the knowledge of the Pledgor and the Secured Party, the affiliates of the Pledgor, the Secured Party or any of its subsidiaries, will, directly or indirectly, use any part of any proceeds or lend, contribute, or otherwise make available such assets in the Accounts in any manner that would result in a violation by any person of economic, trade, or financial sanctions, requirements, or embargoes imposed, administered, or enforced from time to time by the United States (including, without limitation, the Office of Foreign Assets Control of the U.S. Department of the Treasury and the U.S. Department of State), the United Kingdom (including, without limitation, His Majesty's Treasury), the European Union and any EU member state, the United Nations Security Council, and any other relevant sanctions authority.

13.    **Notices; Instructions.**

(a)    Any notice or instruction hereunder shall be in writing in English, and may be sent by (i) secure file transfer or (ii) electronic mail with a scanned attachment thereto of an executed notice or instruction, and shall be effective upon actual receipt by the Bank in accordance with the terms hereof.  Any notice or instruction must be executed (which execution may be manual or affixed by DocuSign) by an authorized person of the Pledgor or the Secured Party, as applicable (the person(s) so designated from time to time, the "**Authorized Persons**").  Each of the applicable persons designated on Schedule B and Schedule C attached hereto have been duly appointed to act as Authorized Persons hereunder and individually have full power and authority to execute any notices or instructions, to amend, modify or waive any provisions of this Agreement, and to take any and all other actions permitted under this Agreement, all without further consent or direction from, or notice to, it or any other party.  Any notice or instruction must be originated from a corporate or government domain.  Any change in designation of Authorized Persons shall be provided by written notice, signed by an Authorized Person, and actually received and acknowledged by the Bank.  Any communication from the Bank that the Bank deems to contain confidential, proprietary, and/or sensitive information shall be encrypted in accordance with the Bank's internal procedures.

(b)    Each of the Pledgor and the Secured Party understands and agrees that the Bank cannot determine the identity of the actual sender of any notice or instruction and that the Bank shall be entitled to conclusively presume that notices or instructions that purport to have been sent by an Authorized Person have been sent by such Authorized Person.  Each of the Pledgor and the Secured Party agrees: (i) to assume all risks arising out of the use of electronic means (including electronic mail, secure file transfer or such other method or system specified by the Bank as available for use in connection with its services hereunder) to submit instructions to the Bank, including, without limitation, the risk of the Bank acting on unauthorized instructions, and the risk of interception or misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Bank and that there may be more secure methods of transmitting instructions than the method(s) selected by the Pledgor and the Secured Party, as applicable; (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iv) to notify the Bank immediately upon learning of any compromise or unauthorized use of the security procedures.  The Pledgor and the Secured Party agree that the security procedures set forth in Section 13(a) and this Section 13(b)

citi

-6-

are commercially reasonable.

>If to the Pledgor:
>As provided in Addendum 1
>
>If to the Secured Party:
>
>Power Forward Communities, Inc.
>Attn: William N. Jenkins III
>Address: 11000 Broken Land Parkway,
>Columbia, MD 21044
>Email: nate@powerforwardcommunities.org
>
>If to the Bank:
>
>Citibank, N.A.
>Agency & Trust
>388 Greenwich Street
>New York, NY 10013
>Attn.: Nerlie Delly
>Telephone: +1 212-816-6846
>E-mail: CitiGGRFFinancialAgent@citi.com
>
>If to the United States Environmental Protection Agency:
>
>**The Office of the Greenhouse Gas Reduction Fund,**
>**United States Environmental Protection Agency**
>**Attention: David Widawsky**
>**Telephone: +1 202-566-2215**
>**E-mail: GGRF@epa.gov; widawsky.david@epa.gov**

      **14.**    **Amendment; Waiver.**  Any amendment of this Agreement shall be binding only if evidenced by a writing signed by each of the parties to this Agreement.  No waiver of any provision hereof shall be effective unless expressed in writing and signed by the party to be charged.

      **15.**    **Severability.**  The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision. If any provision of this Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

      **16.**    **Mergers and Conversions.**  Any corporation or entity into which the Bank may be merged or converted or with which it may be consolidated, or any corporation or entity resulting from any merger, conversion or consolidation to which the Bank will be a party, or any corporation or entity succeeding to the business of the Bank will be the successor of the Bank hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

citi

170458438.1

17.    **Termination.**   This Agreement shall terminate upon receipt by the Bank of notice from the Secured Party that its security interest in such Accounts and all assets therein have terminated.  Upon receipt of such notice, the Secured Party shall have no further right to originate instructions with respect to the assets in the Accounts.  The Bank shall, upon payment of all outstanding fees and expenses hereunder, promptly forward any amounts held by the Bank in the Accounts to the Pledgor, and the Bank shall be relieved and discharged of any further responsibilities with respect to its duties hereunder.

18.    **Counterparts.**  This Agreement may be executed simultaneously in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement. Signatures on counterparts of this Agreement executed and delivered in electronic format (i.e. "pdf") or by other electronic means (including DocuSign) shall be deemed original signatures with all rights accruing thereto except in respect to any non-US entity, whereby originals may be required.

**[Remainder of Page Left Intentionally Blank]**

citi

170458438.1

**IN WITNESS WHEREOF**, each of the parties has caused this Agreement to be executed by a duly authorized representative as of the day and year first written above.

**CITIBANK, N.A.,**
as Bank

By: _Nerlie Delly_____
Name: Nerlie Delly
Title: Senior Trust Officer

**ENTERPRISE GREEN ACCELERATOR, INC.,**
as Pledgor

By: _Shawn Donovan_____
Name: Shaun Donovan
Title: Chief Executive Officer

**POWER FORWARD COMMUNITIES, INC.,**
as Secured Party

By: _William N Jenkins III_____
Name: William N. Jenkins III
Title: Senior Vice President and COO

**EXHIBIT A**

**FORM OF NOTICE OF EXCLUSIVE CONTROL**

VIA EMAIL: cts.spag@citi.com / CitiGGRFFinancialAgent@citi.com

Nerlie Delly
Vice President
Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, New York 10013
[Re. Account # [●]]

Pursuant to the Account Control Agreement dated ____January 10, 2025____, among **Enterprise Green Accelerator, Inc.** (the "**Pledgor**"), **Power Forward Communities, Inc.** (the "**Secured Party**"), and Citibank, N.A. (the "**Bank**"), we hereby instruct you of the following:

The Pledgor and the Secured Party have agreed that the terms and conditions in the Subaward Agreement indicate the conditions under which the Secured Party may exercise its right of control herein, and such conditions will be defined as "default" for the purposes of the Account Control Agreement.

As required by the Subaward Agreement, the Secured Party has issued a written determination and finding that:

1) Pledgor has failed to comply with the terms and conditions of the Subaward Agreement, and that noncompliance is substantial such that effective performance of the Subaward Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse or material misrepresentation of eligibility status, and that the Secured Party has initiated action under 2 CFR 200.339, or 2 CFR 200.332(d) or (i), to wholly or partly suspend or terminate the Subaward Agreement as authorized in the terms of the Subaward Agreement or applicable provisions of 2 CFR Part 200,

   [or,

2) Another condition constituting a default in the Subaward Agreement has occurred and is continuing].

Therefore, the Secured Party hereby notifies you that (i) a default has occurred and is continuing under the Subaward Agreement and (ii) from and after the receipt of this notice until you receive further instruction from Secured Party, you are hereby directed to retain and hold all funds in the Account or Accounts named in this Notice and not to [invest or] disburse the same to any party whatsoever, other than as instructed by the Secured Party.

**Power Forward Communities, Inc.,**
as Secured Party


By:_____
    Name:
    Title:
    Date:

Exhibit A

**EXHIBIT B**

**FORM OF ACCOUNT DIRECTION (NCIF Financial Assistance Subrecipient)**
**Pledgor's UEI Number:** _____WXQEBMGBZG11_____

[Date]

Citibank, N.A.
Agency & Trust
388 Greenwich Street
New York, NY 10013
E-mail: cts.spag@citi.com

VIA: CitiSFT

RE: Account      Control      Agreement      dated <u>January 10, 2025</u>, among
Enterprise Green Accelerator, Inc. (the "**Pledgor**"), Power Forward Communities, Inc.  (the
"**Secured Party**"), and Citibank, N.A. (the "**Bank**")

Pursuant to Section 2 of the above referenced Account Control Agreement, the Pledgor hereby
instructs the Bank to disburse a total amount of $[●] funds as per below and as per the attached
upload file named xxx:

<u>**Check applicable boxes:**</u>

( ) **Internal Transfer within the Bank (intra-entity).**

( ) **Internal Transfer within the Bank (inter-entity).**

( ) **External Transfer outside the Bank (for Predevelopment Activities, Market-Building
Activities, and/or Program Administration Activities).**

( ) **External Transfer outside the Bank (for Financial Assistance Activities).**

<u>**If an Internal Transfer within the Bank (intra-entity), check the following applicable boxes:**</u>

( ) **Transfer of $[●] across Pledgor's 'Budget' sub-accounts, as defined in the Subaward
Agreement**.

( ) **Transfer of $[●] from Pledgor's 'Program Income from Operations' account to Pledgor's
'Budget' sub-account(s), as defined in the Subaward Agreement**.

( ) **Transfer of $[●] from Pledgor's 'Reserve' account to Pledgor's 'Program Income from
Operations' account, as defined in the Subaward Agreement.**

( ) **Transfer of $[●] from Pledgor's 'Budget' sub-account(s) or 'Program Income from
Operations' account to 'Reserve' account, as defined in the Subaward Agreement. The
Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the workplan for the Subaward
Agreement supported with EPA funding. Financing agreements for identified Qualified Projects*

Exhibit B

*as defined in the Terms and Conditions of the Secured Party's Grant Agreement necessitating the transfer have been reviewed by Subrecipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

**<u>If an Internal Transfer within the Bank (inter-entity), check the following applicable box:</u>**

**( ) Transfer of \$[●] from Pledgor's 'Budget' sub-account(s) to Secured Party's 'Budget' sub-account(s) as defined in the Subaward Agreement and compliant with the terms and conditions of the Grant Agreement, including the EPA Subaward Policy.**

**<u>If an External Transfer outside the Bank (for Predevelopment Activities, Market-Building Activities, and/or Program Administration Activities), check one of the following boxes:</u>**

**( ) Disbursement of \$[●] for Predevelopment Activities as defined in the Subaward Agreement.**

**( ) Disbursement of \$[●] for Market-Building Activities as defined in the Subaward Agreement.**

**( ) Disbursement of \$[●] for Program Administration Activities as defined in the Subaward Agreement.**

**<u>If an External Transfer outside the Bank (for Financial Assistance Activities), check the following applicable boxes:</u>**

**( ) Disbursement of \$[●] from Pledgor's 'Budget' sub-account to provide Financial Assistance to Qualified Projects as defined in the Subaward Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this expenditure is necessary to execute against the workplan for the Subaward Agreement supported with EPA funding. Financing agreements for identified Qualified Projects as defined in the Terms and Conditions of the Secured Party's Grant Agreement necessitating the transfer have been reviewed by Subrecipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

**( ) Disbursement of \$[●] from Pledgor's 'Reserve' account to satisfy a legal obligation to a third party as defined in the Subaward Agreement. The Pledgor hereby certifies to Secured Party the following in respect of this transfer:**

*"The amount of this transfer is necessary to execute against the workplan for the Subaward Agreement supported with EPA funding and pay a third party pursuant to a financing agreement that has been reviewed by Subrecipient's counsel for legal sufficiency. This certification is a material representation for the purposes of an EPA Financial Assistance Agreement and knowing and willful false statements may be subject to prosecution under 18 U.S.C. 1001 and other applicable criminal, civil and administrative sanctions"*

170458438.1

Capitalized terms in this instruction letter not otherwise defined shall have the same meaning given to them in the Account Control Agreement.

Signature on this Account Direction executed and delivered in electronic format (i.e. "pdf") or by other electronic means (including DocuSign) shall be deemed original signatures with all rights accruing thereto.

IN WITNESS WHEREOF, the Pledgor has caused this Account Direction to be duly executed and delivered as of the date first written above.

Pledgor:


_____

Authorized Person

Exhibit B

**ADDENDUM 1**
**Account Control Agreement**

| | |
|---|---|
| **Date of Account Control Agreement** | January 10, 2025 |
| **Grant Agreement** | Agreement Title: NCIF Application to Create Community Abundance by Decarbonizing America's Households (5G – 84096001)<br>Agreement Date: 8/8/2024 |
| **Subaward Agreement** | Agreement Title: GGRF NCIF Subaward Agreement Between PFC and EGA, Inc.<br>Agreement Date: 12/26/2024 |
| **Pledgor Notice Details** | Attn: Shaun Donovan, 11000 Broken Land<br>Address: Pkwy, Ste 800, Columbia MD 21044<br>Email: sdonovan@enterprisecommunity.org |
| **UEI Number** | WXQEBMGBZG11 |
| **Tax Identification Number** | 93-4026969 |
| **Citi Deposit Instructions** | Bank: CITIBANK, N.A.<br>ABA: 0210-0008-9<br>Account Name:<br>Account Number:<br>Ref: |

**Money Market Fund Investment Selection**

| Fund Name | Fund Number | CUSIP |
|---|---|---|
| J.P. Morgan 100% US Treasury Securities Money Market Fund Capital Share Class (3163), 4812A0375 | | |

**Accounts to Be Established**

| Account Number | Account Name |
|---|---|
| 14201700 | EnterpGreen Reserves |
| 14201200 | EnterpGreen Program Admin |
| 14201400 | EnterpGreen Market Building |
| 14202000 | EnterpGreen Program Income from Ops |
| 14201900 | EnterpGreen Financial Assistance |
| 14201500 | EnterpGreen Other Pass Through |
| 14201600 | EnterpGreen Predevelopment |

**CitiVelocity Reporting Entitlements Request**:

The Pledgor hereby requests that the Bank entitle the following individuals to view-only access to the Bank's client reporting system for all accounts opened under this Account Control Agreement.

Pledgor Client Profile Name:

| Name | Phone Number | Email |
|---|---|---|
| David Rands | 410-230-3649 | drands@enterprisecommunity.com |

170458438.1

| | | |
|---|---|---|
| Matt Foster | 410-230-2297 | mattfoster@enterprisecommunity.com |
| Jeff Galentine | 410-772-2691 | jgalentine@enterprisecommunity.com |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

The Pledgor hereby acknowledges that all accounts opened under this Account Control Agreement will be entitled to the Bank's client reporting system and made available for view-only access to the following Client Profiles and their associated users:

| Entity | Client Profile Name |
|---|---|
| Secured Party | Citibank NA FBO Power Forward Communities, Inc. |
| United States Environmental Protection Agency | United States Environmental Protection Agency |

**CitiSFT Entitlements Request**:

Citi makes available the Secure File Transfer (CitiSFT) platform for clients to securely upload Account Directions. The Pledgor hereby requests that the Bank entitle the below individuals with upload only access to CitiSFT:

| Name | Phone Number | Email | Maker, Checker, Maker and Checker |
|---|---|---|---|
| David Rands | 410-230-3649 | drands@enterprisecommunity.com | Maker and Checker |
| Matt Foster | 410-230-2297 | mattfoster@enterprisecommunity.com | Maker and Checker |
| Jeff Galentine | 410-772-2691 | jgalentine@enterprisecommunity.com | Maker and Checker |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Pledgor:

Signed by:

*Shaun Donovan*

F4D0ED06CEF841F...

Authorized Signature

Addendum 1

170458438.1

## SCHEDULE A

## BANK COMPENSATION

### General compensation

For the services described in the Account Control Agreement, the Bank shall charge each Pledgor as follows:

| Agency & Trust Services | Fees |
| --- | --- |
| **Acceptance Fee** <br> This one-time fee covers the acceptance of the appointment, the review of the related Transaction documents submitted in connection with the execution and delivery thereof, setting up of internal controls, and communication with other members of the working group, as necessary. | Waived |
| **Annual Administration Fee** <br> To cover the administrative functions of Citi under the Agreement, including the establishment and maintenance of the account(s), safekeeping of assets, maintenance of the records, execution and administration of the Agreement provisions, and other duties required under the terms of the Agreement. | Waived |
| **Wire Fees** | Waived |
| **Legal Fees** <br> To cover the review of legal documents by Citibank Agency & Trust's outside counsel. | Waived |

The Transaction documents will be governed in accordance with federal law of the United States, except where there is no applicable federal law, in accordance with the laws of the State of New York, without giving effect to the conflict of laws principles thereof, as established in the Agreement and subject to internal approval and satisfactory review of all documentation. All outgoing payments processed by Citi will be made via wire. Account balances invested in an Institutional Money Market Fund will be chosen by the client from a list of providers that Citi will supply. If invested in a Money Market Fund, fund distributors may provide Citi with Shareholder Servicing fees. These fees are discussed in the fund's prospectus, which will be delivered to the client prior to investment. All of Citi's responsibilities will be non-discretionary and Citi will not be required to make any advances of its own funds. Therefore, all services provided by Citi must strictly follow the terms stated in the Agreements or in the written instructions of the authorized parties or third parties authorized to send instructions to Citi.

In accordance with US regulations regarding anti-money laundering and terrorist financing, Federal law requires Citi to obtain, verify and record information that identifies each business or entity that opens an account or establishes a relationship with Citi. What this means for our clients: when a client opens an account or establishes a relationship, we will ask for the client's business name, a street address and a tax identification number that Federal law requires us to obtain. In accordance with the Unlawful Internet Gambling Act (the "Act"), Citibank, N.A. accounts or other Citibank, N.A. facilities in the United States may not be used to process "restricted transactions" as such term is defined in U.S. 31 CFR Section 132.2(y).

## SCHEDULE B

### PLEDGOR AUTHORIZED LIST OF SIGNERS
**(to be provided separately)**

Each of the following person(s) is authorized to execute documents and to direct the Bank as to all matters on the Pledgor's behalf.  The Bank may confirm the instructions received by return call to any one of the telephone numbers listed below.

**PLEDGOR**

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

170458438.1

**SCHEDULE C**

**SECURED PARTY AUTHORIZED LIST OF SIGNERS**
**(to be provided separately)**

Each of the following person(s) is authorized to execute documents and to direct the Bank as to all matters on the Secured Party's behalf.  The Bank may confirm the instructions received by return call to any one of the telephone numbers listed below.

**SECURED PARTY**

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

|  | Specimen Signature | DocuSign Specimen Signature |
|---|---|---|
| Name:<br>Title:<br>Phone:<br>Email: | | |

170458438.1