# EXHIBIT I

*Democracy Dies in Darkness*

Local Crime & Public Safety

# Read the resignation letter by Denise Cheung, a veteran D.C. federal prosecutor

She refused a Trump administration demand to freeze environmental grant assets.

Today at 3:27 p.m. EST

155

 By Washington Post staff

The head of the criminal division in the U.S. attorney's office in D.C. resigned Tuesday morning after declining to comply with an urgent Trump administration demand to freeze the assets of a multibillion-dollar Biden administration environmental grant initiative and launch a criminal investigation, according to two sources familiar with the matter and the official's resignation letter.

The Washington Post has reproduced the text of veteran prosecutor Denise Cheung's letter to interim U.S. attorney Ed Martin below.

> Re: Resignation
>
> Dear United States Attorney Martin:
>
> As you requested, I am tendering my resignation from this Office.
>
> I have been proud to serve at the U.S. Department of Justice and this Office for over 24 years. During my tenure, which has spanned over many different Administrations, I have always been guided by the oath that I took upon being sworn as an AUSA to support and defend the Constitution. Whether it was prosecuting homicide cases in the Superior Court Division or investigating international terrorism cases in the Criminal Division, I have always worked to enforce the rule of law, to vindicate the rights of victims, and to protect the security of the nation. I believe that the values the Department of Justice stands for, and the many people that work every day to fulfill them, are to be promoted and cherished.

As a member of the management team in the Office, including as Chief of the Criminal Division, I have always sought to offer sound and ethical counsel to my principals and to execute their directives to the best of my ability.

Earlier yesterday. I was asked to review documentation supplied by the Office of the Deputy Attorney General (ODAG) to open a criminal investigation into whether a contract had been unlawfully awarded by an executive agency before the change in Administration and to issue grand jury subpoenas pursuant to this investigation. I was told that there was time sensitivity and action had to be taken that day because there was concern that contract awardees could continue to draw down on accounts handled by the bank handling the disbursements. I conferred with others in the Office, all of whom have substantial white collar criminal prosecution experience, and reviewed documentation provided by ODAG, in determining whether the predicate for opening such a grand jury investigation existed. Despite assessing that the existing documents on their face did not seem to meet this threshold, an ODAG representative stated that he believed sufficient predication existed, including in the form of a video where statements were made by a former political appointee of the executive agency in question.

At one point, it was conveyed that the ODAG representative would work directly with a line AUSA from the Office in handling the matter and bypass any USAO-DC supervisory chain. Upon further conversations with the Principal Assistant U.S. Attorney (PAUSA), and in a subsequent conversation with the ODAG representative, I received clarification that a type of "freeze letter" requesting that the bank freeze assets would be adequate at this point, as opposed to other legal process. I took point on this process.

Upon further discussion with the PAUSA, and upon an understanding that ODAG agreed that such a reach-out was appropriate in light of the lack of any known investigative agency working on the matter, I contacted a supervisor at the Washington Field Office (WFO) of the FBI and provided him with the materials received from ODAG and also referenced the possible existence of the video and statements made by the head of the executive agency. I further conveyed ODAG's desire to send out the freeze letter to the bank as soon as possible as to avoid subsequent payouts. The FBI-WFO supervisor forwarded links of these statements and the video, which I also reviewed. Despite the federal holiday yesterday, the FBI-WFO supervisor, as well as other FBI-WFO managers, spoke frequently throughout the day yesterday with me to discuss the matter, including what, if any, possible criminal charges might be applicable, as well as the sufficiency of the evidence of any criminal offense or the connection of any alleged crime to the accounts at issue.

During this period, I sent a draft freeze letter provided by the FBI-WFO supervisor to the PAUSA at 4:31 p.m. In an email sent at 4:46 p.m., the PAUSA conveyed suggested language "in case it [was] helpful" from the ODAG representative, which included language represented to be from the Second Circuit, including the phrase "the government has probable cause to believe that the funds on deposit in the above-referenced account(s) at [named bank] are subject to seizure and forfeiture to the United States based upon violations..." I subsequently informed the PAUSA that the suggested language was not appropriate to the matter at hand.

Despite expressing some concern about the current lack of evidence of any apparent crime and the need to send out any such freeze letter, FBI-WFO personnel were able to consult with necessary individuals, including legal counsel, at their office. I was told that if FBI-WFO was unwilling to send out such a freeze letter, that you would direct someone from USAO-DC to send out such a correspondence to the bank. However, that contingency did not come to pass, as FBI-WFO determined that they were willing to send out the freeze letter, but asked that I first send them an email stating that, based on the evidence, there was possible evidence of certain criminal violations. I emailed them the following statement: "Based upon the information we received from ODAG and public-source materials, including a video of statements by a former [executive agency] official, USAO-DC believes that there may be conduct that constitutes potential violations of 18 U.S.C. Sec. 371 (conspiracy to defraud the United States) and 18 U.S.C. Sec. 1343 (wire fraud) that merits additional investigation."

After they received this email, FBI-WFO subsequently issued a letter to the bank recommending a thirty-day administrative freeze on certain assets. After this letter was issued at approximately 7:28 p.m. yesterday night, I received a call from the PAUSA and you shortly thereafter. You expressed your dissatisfaction about the adequacy of the FBI-WFO letter and criticized that the language merely "recommended" that a freeze of the accounts take place, notwithstanding that the same language was used in the draft I sent to the PAUSA earlier in the day. You also directed that a second letter be immediately issued to the bank under your and my name ordering the bank not to release any funds in the subject accounts pursuant to a criminal investigation being run out of USAO-DC. When I explained that the quantum of evidence did not support that action, you stated that you believed that there was sufficient evidence. You also accused me about wasting five hours of the day "doing nothing" except trying to get what the FBI and I wanted, but not what you wanted. As I shared with you, at this juncture, based upon the evidence I have reviewed, I still do not believe that there is sufficient evidence to issue the letter you described, including sufficient evidence to tell the bank that there is probable cause to seize the particular accounts identified. Because I believed that I lacked the legal authority to issue such a letter, I told you that I would not do so. You then asked for my resignation.

I remain committed to the oath that I took, and it has been an honor of a lifetime to be an AUSA in this Office. I know that all of the AUSAs in the Office will continue to uphold that pledge they have taken, following the facts and the law and complying with their moral, ethical, and legal obligations.

Sincerely,

Denise Cheung